IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

GWENDOLYN THOMPSON, on behalf of
herself and others similarly situated                                               PLAINTIFF

vs.                                                           CIVIL ACTION No.: 3:24-CV-331-HTW-LGI

BREW CULTURE, LLC                                                                   DEFENDANT

ORDER

Before this Court is Defendant Brew Culture, LLC's Motion to Compel Arbitration or, alternatively, Strike Class Allegations and Jury Demand [Doc. 10]. Having reviewed the submissions, applicable law, and the record in this matter, this Court hereby finds as follows.

I.   JURISDICTION

This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331[1], often hailed as federal question jurisdiction, since this action arises under the Telephone Consumer Protection Act ("TCPA")[2], 47 U.S.C. § 227, a federal enactment. Venue is proper in this Court as Plaintiff resides in Mississippi, and the alleged actions giving rise to the claims occurred within this judicial district. 28 U.S.C. § 1391 (b)(2).

II.   BACKGROUND

Plaintiff, Gwendolyn Thompson ("Plaintiff") is a resident of Mississippi and brings this action alleging violations of the TCPA by Defendant Brew Culture, LLC ("Brew Culture"), a

---

[1] Title 28 U.S.C. § 1331: Federal question. The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

[2] The Telephone Consumer Protection Act, enacted in 1991, restricts telemarketing communications and prohibits the use of automated dialing systems or prerecorded voice messages without express consent from recipients.

Wyoming limited liability company headquartered in Fayetteville, Arkansas. Brew Culture operates and franchises coffee stands nationwide under the brand "7 Brew."

Plaintiff alleges that Brew Culture violated the TCPA by sending her unsolicited telemarketing text messages. Plaintiff contends that she received four unwanted telemarketing text messages between February 29, 2024, and March 19, 2024. Plaintiff seeks relief individually and on behalf of a putative class of similarly situated persons who allegedly received unsolicited messages within the last four years. She demands a trial by jury.

The record shows that on February 29, 2024, Plaintiff visited a 7 Brew coffee stand in Clinton, Mississippi, during a promotional event offering free coffee. During this event, 7 Brew offered customers the opportunity to enroll in a "rewards program" by providing a phone number. The parties herein do not state the specific rewards provided by the program; however, photos submitted to this Court reflect that the allegedly unsolicited text messages welcomed Plaintiff to the program and offered her the opportunity to claim $2.00 and 50% off any drink. [Doc. 15, 6-7]. Notably, each text message contained a sentence instructing Plaintiff to "Reply STOP to opt out." *Id*.

Plaintiff agrees 7 Brew offered her this opportunity to enroll, and that she voluntarily provided her mobile phone number to enroll in the 7 Brew rewards program. She states that "the circumstances under which [she] provided [her] phone number was to receive free coffee at a grand opening of the 7 Brew Coffee. [Doc. 14-1, ¶ 9].

Brew Culture avers that the rewards program is administered by Touchpoint Restaurant Innovations, Inc. ("Touchpoint"), a third-party vendor that provides subscription services and operates the loyalty rewards infrastructure on Brew Culture's behalf.

Immediately after enrolling, Plaintiff received a confirmation text message that included a prominent hyperlink to Touchpoint's General Terms of Service. That hyperlink provided information about her rewards account and included language regarding arbitration. The text message also included the words "Reply STOP to opt out." Plaintiff did not respond.

The relevant parts of Touchpoint's General Terms of Service are as follows:

> These General Terms of Service ("General Terms") are a legal agreement between you ("you," "your," "buyer") and Touchpoint Restaurant Innovations, Inc. ("Touchpoint," "we," "our" or "us") and govern your use of Touchpoint's services, including mobile applications, websites, Kiosks, POS systems, Loyalty and Rewards programs, and other products and services (collectively, the "Services") that are used by our business partners who operate individual stores, locations or entire brands (collectively, "Businesses" or "Stores").
>
> By using any of the Services directly or via a business that uses our Services, you accept and agree to these General Terms and any policies referenced within ("Policies"), including terms that limit our liability (see Section 10 and 11) and require individual arbitration for any potential legal Case 3:24-cv-00331-HTW-LGI Document 11 Filed 09/10/24 Page 2 of 10 04545947 - 3 - dispute (see Section 12 and 13). You should read all of our terms carefully.

[Doc. 11-2 at introductory paragraphs].

> 13. Binding Individual Arbitration You and Touchpoint agree to arbitrate any and all Disputes by a neutral arbitrator who has the power to award the same damages and relief that a court can. ANY ARBITRATION UNDER THESE GENERAL TERMS WILL ONLY BE ON AN INDIVIDUAL BASIS; CLASS ARBITRATIONS, CLASS ACTIONS, PRIVATE ATTORNEY GENERAL ACTIONS, REPRESENTATIVE ACTIONS AND CONSOLIDATION WITH OTHER ARBITRATIONS ARE NOT PERMITTED. YOU WAIVE ANY RIGHT TO HAVE YOUR CASE DECIDED BY A JURY AND YOU WAIVE ANY RIGHT TO PARTICIPATE IN A CLASS ACTION AGAINST TOUCHPOINT. lf any provision of this arbitration agreement is found unenforceable, the unenforceable provision will be severed, and the remaining arbitration terms will be enforced (but in no case will there be a class or representative arbitration). All Disputes will be resolved finally and exclusively by binding individual arbitration with a single arbitrator administered by the American Arbitration Association according to this Section and the applicable arbitration rules for that forum. Any arbitration hearing will occur in San Francisco, California, or another mutually agreeable location. The arbitrator's award will be binding on the parties and may be entered as a judgment in any court of competent jurisdiction. For purposes of this arbitration provision, references to you and Touchpoint also include respective subsidiaries, affiliates, agents, employees,

predecessors, successors and assigns as well as authorized users or beneficiaries of the Services. Subject to and without waiver of the arbitration provisions above, you agree that any judicial proceedings will be brought in and you hereby consent to the exclusive jurisdiction and venue in the state courts in the City and County of San Francisco, California, or federal court for the Northern District of California.

[Doc. 11-2 at ¶ 13].

This text message also provided a clear instruction to opt out of the rewards program by replying "STOP," which Plaintiff did not do. Brew Culture maintains that Plaintiff explicitly consented to the arbitration provisions and class action waivers when she voluntarily provided her mobile phone number to enroll in the program.

Plaintiff, contrariwise, opposes arbitration. She contends that she was unaware of the arbitration clause terms and, therefore, did not explicitly consent to arbitration. Plaintiff further asserts the arbitration clause specifically references Touchpoint, not Brew Culture, and thus does not explicitly extend to disputes involving Brew Culture directly. Plaintiff emphasizes that she provided her telephone number only to receive a free coffee promotion and never saw the arbitration terms.

### III. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3-4, a district court must compel arbitration when: (1) there is a valid agreement to arbitrate; and (2) the dispute falls within the scope of the arbitration agreement. *Crawford Prof. Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 257 (5th Cir. 2014).

### V. DISCUSSION

The central question facing this Court is whether Plaintiff knowingly consented to a valid arbitration agreement that encompasses her claims. Under the FAA, in determining whether the

parties agreed to arbitrate a certain matter, courts apply the contract law of the particular state that governs the agreement. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Accordingly, Mississippi state law applies here.

The Mississippi Supreme Court consistently has held that "[i]n Mississippi, a person is charged with knowing the contents of any document that [s]he executes." See *Russell v. Performance Toyota, Inc.,* 826 So.2d 719, 726 (Miss.2002). A person, therefore, "cannot avoid a written contract which [she] has entered into on the ground that [she] did not read it or have it read to [her]." *J.R. Watkins Co. v. Runnels,* 252 Miss. 87, 172 So.2d 567, 571 (1965). *See Tel–Com Management, Inc. v. Waveland Resort Inns, Inc.,* 782 So.2d 149, 153 (Miss.2001) (holding that "[t]o permit a party when sued on a written contract, to admit that [she] signed it ... but did not read it or know its stipulations would absolutely destroy the value of all contracts"); *see also Haggans v. State Farm Fire & Cas. Co.,* 803 So.2d 1249 (Miss.2002); *Cherry v. Anthony, Gibbs, Sage,* 501 So.2d 416 (Miss.1987).

Plaintiff's enrollment in the 7 Brew Rewards Program required her to provide her mobile phone number, after which she immediately received a confirmation text message welcoming Plaintiff to the rewards program, along with a direct hyperlink to Touchpoint's General Terms of Service. This link led to a page containing the arbitration agreement. The text also provided clear instructions for opting out by replying "STOP," which Plaintiff did not do. In this Courts eye, the text message provided Plaintiff ample and conspicuous notice of the arbitration terms to establish consent. She had both the opportunity and the means to read, review, and reject those terms before continuing participation in the rewards program.

This conclusion is reinforced by Fifth Circuit precedent holding that constructive notice and continued participation establish consent to arbitration. In *Kubala v. Supreme Prod. Servs.,*

*Inc.*, 830 F.3d 199, 202-04 (5th Cir. 2016), the Fifth Circuit enforced arbitration where an employee continued his employment after his employer implemented a new policy requiring employees to arbitrate any employment disputes.

Similarly, *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004), upheld arbitration where conduct reflected assent, despite the absence of a signed agreement. *In re Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993), reaffirmed the strong federal policy favoring arbitration agreements when their language encompasses the dispute. Applying these principles here, Plaintiff's TCPA claim falls within the broad arbitration clause covering disputes arising from her enrollment in the 7 Brew Rewards program.

Next, the arbitration clause broadly covers "any and all disputes" and specifically waives the right to class actions and jury trials. It applies to disputes involving Touchpoint, its affiliates, agents, and business partners, which includes Brew Culture. An arbitration agreement encompassing affiliates extends to disputes involving a company operating within the affiliate's system. See *Polyflow, LLC v. Specialty RTP, LLC*, 993 F.3d 295, 304 (5th Cir. 2021). Plaintiff's TCPA allegations stem directly from her enrollment and participation in the rewards program, bringing them squarely within the agreement's scope.

Accordingly, the Court finds the arbitration agreement both valid and enforceable.

## VI.   CONCLUSION

This Court finds a valid arbitration agreement exists between Plaintiff and Defendant Brew Culture, LLC. Plaintiff's claims clearly fall within the agreement's scope; accordingly, this Court must enforce the arbitration agreement under the FAA.

**IT IS THEREFORE ORDERED** that Defendant Brew Culture, LLC's Motion to Compel Arbitration [Doc. 10] is **GRANTED**. Plaintiff's claims are hereby stayed, and Plaintiff is ordered to arbitrate her claims against Defendant Brew Culture, LLC.

**IT IS FURTHER ORDERED** that Defendant's alternative Motion to Strike Class Allegations and Jury Demand is **DENIED as MOOT** in light of this Court's ruling.

**SO ORDERED AND ADJUDGED this the  1st   day of  August  , 2025.**

                                            **/s/HENRY T. WINGATE**
                                            **UNITED STATES DISTRICT COURT JUDGE**